**KAREN E. BEZNER, ESQ.**
567 Park Avenue, Suite 103
Scotch Plains, New Jersey 07076
(908) 322-8484
Attorney for Karen E. Bezner, Trustee
Karen E. Bezner
KB 5770

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In the Matter of:<br><br>IOANA NEDELCU,<br><br>Debtor. | In Proceedings for Liquidation under Chapter 7 of the Bankruptcy Code<br><br>Hon. Michel B. Kaplan, C.U.S.B.J.<br><br>Bankruptcy No. 23-12065 |

OBJECTION BY KAREN E. BEZNER, TRUSTEE TO MOTION BY VICTOR GOLDBERG
TO DISMISS THIS CHAPTER 7 CASE

Karen E. Bezner, Chapter 7 Trustee, by way of objection, states as follows:

1) I am the trustee appointed in the above-referenced case. As such, I have direct knowledge of the facts contained in this objection, and I am authorized to make this objection on behalf of this estate.

2) I make this objection to Mr. Goldberg's motion to dismiss this Chapter 7 case, for abuse pursuant to 11 U.S.C. Section 707(b) and fraud pursuant to 11 U.S.C. Section 727(a).

3) In examining Mr. Goldberg's motion, it is worth noting that he states his intent to dismiss this Chapter 7 case so as to preserve his ownership interest in the real property at 40 Essex Road, Maplewood, New Jersey to the exclusion of the debtor. This goal is consistent with all of his filings thus far.

4) In addressing Mr. Goldberg's motion, I will examine each document in the order that it was submitted.

**Document #1, Motion To Dismiss, 20-Pages**

5) In this document, Mr. Goldberg analyzes the debtor's petition, line by line, to allege fraud and abuse.

6) At Page 2, Paragraph 7, Mr. Goldberg notes that, in response to the question "Are you a sole proprietor of any full or part-time business?" Ms. Nedelcu answered "No". Mr. Goldberg is referring to Treasure Island, a company which appears to have ceased doing business some years prior to the filing of this petition.

7) At Paragraphs 27 through 31, Mr. Goldberg repeats the debtor's answers to the Statement of Financial Affairs, but never says what, if anything, about the debtor's answers is untrue or inaccurate.

8) Mr. Goldberg presents his legal authority at Page 7, Paragraph 32, citing 11 U.S.C. Section 707(a) of the Bankruptcy Code (<u>not</u> 707(b)) as his sole grounds for alleging that Ms. Nedelcu has committed fraud or otherwise abused the system. The grounds noted at Sections 707(a) are (1) unreasonable delay by the debtor that is prejudicial to creditors; (2) non-payment of any fees and charges; and (3) failure of the debtor in a voluntary case to file, within 15-days or such additional time as the court may allow, the information required by Section 521. None of these grounds are applicable in this case.

9) Nevertheless, Mr. Goldberg generically refers to "bad faith" and cites a number of cases in his support, none of which appear to share any characteristics of the present case.

10) At Paragraph 42, Mr. Goldberg alleges bad faith in the debtor's failure to reveal their joint interest in Treasure Island Interiors, a used furniture store which appears to have closed in or about 2021.

11) At Paragraph 44, Mr. Goldberg alleges that Ms. Nedelcu committed various crimes in the past for which she has been prosecuted. Again, there is no explanation as to why these facts bear any relationship to the current petition.

12) At Paragraph 45, Mr. Goldberg alleges that the debtor failed to schedule her ownership interest in properties in Romania, and annexed a 21-page "Fraud Report" prepared by Jennifer Ostwald, a "Certified Fraud Examiner" who, as the Trustee has previously observed, is not licensed by any governmental entity; has no apparent education or experience which qualifies her

to render the report; and who specifies in the report that she relies solely on information provided by Mr. Goldberg to reach her conclusions. The report does not qualify as "evidence" for purposes of this case.

13) In fact, Ms. Nedelcu revealed her ownership interest in one property in Romania in the case information statement for her matrimonial proceeding. The Trustee has obtained translations of the deeds to the various properties referred to by Mr. Goldberg, and describes their contents at Paragraphs 36 - 41 below.

14) At Paragraph 49, Mr. Goldberg references claims against the homeowners insurance for the Maplewood property, the dates for which are not provided. Mr. Goldberg himself solicited one such insurance claim, the proceeds of which has been held by the matrimonial court for ultimate turnover to the Trustee.

15) Throughout the rest of this submission, Mr. Goldberg repeats the same issues he previously raised. None of these issues amounts to fraud, concealment of assets or other cause to dismiss this Chapter 7 case. Moreover, most of Mr. Goldberg's accusations are submitted without any documentary evidence, making the truth of those accusations highly suspect.

16) The Trustee respectfully submits that there is nothing in Mr. Goldberg's motion which warrants dismissal of the case, for fraud, bad faith, or for any other reason.

17) At Paragraph 59, Mr. Goldberg says that the debtor "continued her false oaths and concealment at the 341(a) meeting of the creditors". I re-played the 341(a) meeting, which I have on tape, and Mr. Goldberg did not appear at that meeting. Moreover, the debtor committed no false oath or concealment at that meeting. Mr. Goldberg never asked me for a copy of the audio tape.

**Document #2, Certification, 1-Page**

18) This is the certification page for the transcriber of a hearing in Superior Court on October 28, 2016.

**Document #3, Reply To Surreply, 4-Pages**

19) Mr. Goldberg continues to accuse the debtor of hiding substantial assets. He is sure that she owns multiple properties in Romania, because he has the documents (in Romanian) and he sees her name cited therein. Accordingly, he reasons, she must own the properties which are the subject of those documents. The translation of these documents confirms that she does not.

20) I have annexed a copy of the translation of these documents as Exhibit A, and an explanation of that translation at Paragraphs 36 - 41 below.

**Document #4, Exhibit 1, 86-Pages**

21) This submission is a transcript of a hearing on the debtor's application for a protective order on June 8, 2016. The transcript covers the first day of hearings, not subsequent dates of hearing.

22) The 86-page transcript describes a horrific series of beatings administered to Ms Nedelcu by Mr. Goldberg over a period of time, resulting in her inability to raise her right arm and her confinement to a wheel chair due to spinal damage.

23) There is nothing of any evidentiary value in this transcript, and the reason for its inclusion is a mystery.

**Document #5, Exhibit 2, 6-Pages**

24) This submission consists of a certificate of formation for Treasure Island Interiors, LLC dated April 28, 2015. The submission is accompanied by a letter dated July 31, 2020 by Stewart I. Schmier of Bottom Line Investigations, wherein he provides information concerning Ms. Nedelcu's past.

25) I have reviewed the letter, and there is nothing therein which has any bearing on this bankruptcy case. It appears that the purpose of this submission is to smear Ms. Nedelcu's character. Moreover, there is no copy of any of the information provided Mr.Schmier, so that the conclusions he reaches cannot be verified.

**Document #6, Exhibit 2, 12-Pages**

26) This submission contains all of the documents in Document #5, to which is added documents from the debtor's matrimonial case, including the Case Information Statement. The debtor lists her ownership interest in a Romanian property in the CIS, and the Trustee has obtained a more detailed description of the property from Ms. Nedelcu and her attorney. Other than that, there is nothing relevant to the bankruptcy case in the Case Information Statement.

**Document #7, Exhibit 2, 18-Pages**

27) This document is again the Certified Fraud Report prepared by Ms. Ostwald.

28) As stated above, Ms. Ostwald confirms that her methodology in preparing this report was to take allegations given to her by Mr. Goldberg without performing any independent investigation as to the truth of those allegations. This methodology guarantees that this report is not evidential. Ms. Ostwald does go to some lengths to respond to the Trustee's concerns about her qualifications. Those concerns are not allayed.

**Document #8, Exhibit 3, 14-Pages**

29) These documents appear to be different from the ones previously obtained by the Trustee concerning properties in Romania. The translation of those documents, which the Trustee received from the debtor's former husband, Cornel Nedelcu, are annexed hereto as Exhibit A. These documents provide as follows.

**The Romanian Properties**

30) At ECF No. 32, filed on November 15, 2023, Mr. Goldberg submits a 234-page appraisal prepared by Townsend Estates in Romania on November 16, 2021. The appraisal covers one (1) residential property in Potlogi Commune, Dambovita County, Romania, and three (3) apartments in Bucharest.

31) On the first page of the appraisal, third paragraph, the appraiser notes that "such variables and internal dilapidations and structural integrity are outside the scope of the evaluation, and are therefore unable to report that any such parts as free from defects". Moreover, at Paragraph

- 5 -

2.1, the appraiser states that he has not performed a structural survey nor an inspection of the premises.

32) In short, this appraisal is hypothetical only.

33) The Certified Fraud Report which appears as Exhibit 1 to ECF No. 33, notes, at Page 15 that Ms. Nedelcu purchased the Potlogi property from her ex-husband for $40,000.00. The alternative valuation of between $310,000 and $350,000 comes from the Townsend Estates Appraisal.

34) This property was described by Ms. Nedelcu, and appears to have severe structural and aesthetic issues. It was described to me as a "roof held up by four shaky walls", and little else, without utilities or septic. This appears consistent with the $40,000.00 purchase price noted by the Certified Fraud Report, and much more realistic than the hypothetical appraisal prepared by Townsend Associates.

35) Because administration and sale of the property will exceed the value of the property to the estate, I will submit my notice of abandonment. It also appears that all legitimate creditors of the estate can be paid in full from the proceeds of sale of the Essex Road, Maplewood property.

**The Deed Translations**

36) The deeds given to me by Cornel Nedelcu appear annexed hereto as Exhibit A. The first page is a "Certificate of Translation" prepared by Romtranslation, Inc., i.e., Roxana Dinu, a certified member of the American Translator's Association to whom I was referred by Popescu Law Firm in Old Bridge, New Jersey. The cost of the translation was $750.00.

37) The second document is from the Bucharest Court, Fifth Civil Division which reviewed the judgment of divorce issued by the Queens County Family Court on November 21, 2008 and found that it was a valid judgment which would be accorded full enforcement as a foreign judgment.

38) The next four pages are a Voluntary Partition Agreement which describes Apartment No. 8 in Bucharest, and the property in Potlogi. The Voluntary Partition Agreement provides that Mr. Nedelcu will retain Apartment No. 8, and Ms. Nedelcu will retain the Potlogi property.

39) The next document is entitled "Authentication No. 1442" which authenticates the Voluntary Partition Agreement which proceeds it.

40) The next four pages are two, 2-page contracts of sale/purchase of apartments in Bucharest by Cornel Nedelcu. These deeds confirm that only Mr. Nedelcu had an interest in these properties during the course of the marriage. Ms. Nedelcu never had an interest in these two apartments.

41) In short, these documents confirm that Ms. Nedelcu paid $40,000.00 for the Potlogi residence to her ex-spouse, in a settlement agreement. Mr. Nedelcu retained an apartment in Bucharest. Mr. Nedelcu also owned two other apartments in Bucharest to which Ms. Nedelcu never had an ownership interest.

42) Mr. Goldberg's allegation that Ms. Nedelcu owned the Potlogi residence and three apartments in Bucharest, is an unsupported fabrication. Ms. Nedelcu retains the Potlogi property, for which she paid $40,000.00 to her ex-spouse in settlement of the divorce case.

**Conclusion**

43) For all of the foregoing reasons, Mr. Goldberg has failed to produce any facts or law to support his motion to dismiss, and his motion should be denied.

        **KAREN E. BEZNER, ESQ.**
        Counsel to Karen E. Bezner, Trustee

        By:   /s/   Karen E. Bezner
                Karen E. Bezner

December 27, 2023